# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NAVAJO NATION and CURTIS BITSUI,

      Plaintiffs,

    v.                                                                      No. 1:16-cv-00888 WJ/LF

HONORABLE PEDRO G. RAEL, Judge,
New Mexico Thirteenth Judicial District, and
LEMUEL L. MARTINEZ, District Attorney,
New Mexico Thirteenth Judicial District,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS
## and
## DENYING PLAINTIFFS' AMENDED MOTION
## FOR JUDGMENT ON THE PLEADINGS

THIS MATTER comes before the Court upon Judge Rael's Amended Motion for Judgment on the Pleadings, filed December 15, 2016 (**Doc. 21**); and Plaintiffs' Amended Motion for Judgment on the Pleadings, filed January 18, 2017 (**Doc. 25**).[1] Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is GRANTED. Plaintiffs' motion is accordingly DENIED. The Court finds that the *Younger* doctrine, which Defendants argue is applicable to this case, is not relevant to the circumstances of this case, but that the doctrine of collateral estoppel bars this Court from hearing this matter.

---

[1] Defendant Martinez joins in Judge Rael's motion. *See* Doc. 22. Also, Judge Rael and Defendant Martinez have filed separate responses to Plaintiffs' motion for judgment on the pleadings. *See* Docs. 27 & 29.

**BACKGROUND**

Plaintiffs in this lawsuit contend that the New Mexico state court has no jurisdiction to hear a case brought against Curtis Bitsui, a Native American, in which he is alleged to have interfered with certain easements traversing a tract of land that he owns and which he considers to be Indian country. *State of New Mexico v. Curtis Bitsui,* Decision & Order, No: D1333-CV-2015-00228. Defendants in this case are the Honorable Pedro G. Rael ("Judge Rael"), the state court judge assigned to the underlying litigation and Lemuel Martinez, District Attorney for the New Mexico's Thirteenth Judicial District. Defendants contend that Judge Rael's finding that the state court has jurisdiction over the matter should not be declared void by this Court.

**I.   Underlying State Court Case**

Curtis Bitsui ("Bitsui" or "Plaintiff") is a member of the Navajo Nation, and resides upon an Indian allotment ("Allotment") in which he holds a beneficial interest, near San Fidel, New Mexico. The patent for the Allotment was issued by the Director of the Bureau of Land Management ("BLM") in 1953 by Patent #1137489 ("the Patent") to the widow and heirs of Francisco Pieseto, an Indian. On December 16, 2015, the State of New Mexico, through its Thirteenth Judicial District Attorney (Defendant Martinez) brought a civil enforcement action against Bitsui seeking injunctive relief, alleging that Bitsui was interfering with the rights of the San Jose de la Cienega Community Association ("Community Association") to the "acequia" (or ditch) that traverses the Allotment. (Ex. C to Initial Compl.) The patent issued by BLM on January 21, 1953 for the land in question reads as follows in relevant part:

> . . . the UNITED STATES OF AMERICA, . . . hereby declares that it does and *will hold the land above described for the period of twenty-five years, in trust* for the sole use and benefit of the said Widow and Heirs of Francisco Pieseto and to their heirs, according to the laws of the State where such land is located, *and at the end of said period the United States will convey the same by patent to the said Widow and Heirs of of [sic] Francisco Pieseto in fee, discharged of said trust and*

> *free from all charges and encumbrances whatsoever,* subject to any vested and accrued water rights for mining, agricultural manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the legal customs, laws and decisions of court; . . .[2]

Plaintiff Bitsui ("Bitsui") filed a Motion to Dismiss in the state court case alleging that the court had no subject matter jurisdiction over the claims made by the State because the Allotment is Indian country. *See* Doc. 2 at 2. He based his argument on 18 U.S.C. §1151, which defines "Indian country" as including "all Indian allotments . . . ." and thus when an "offense" is committed on Indian country, the United States has "sole and exclusive jurisdiction" pursuant to §1152. Bitsui argued that even though the term "Indian allotment" is not used in the U.S. Patent issued to his predecessors, the tract of land in question was nevertheless held by the United States in trust for the land owners pursuant to the Indian Homestead Act of July 4, 1884, which conferred homestead entry rights upon Native Americans. *See U.S. v. Jackson*, 50 S.Ct. 143, 144 (1930). In his motion, Bitsui also relied on a Bureau of Indian Affairs ("BIA") Title Status Report issued on January 29, 2016 which purportedly states that the land at issue is in fact held in trust by the United States, which makes it an "allotment" and therefore "Indian country" and not subject to state court jurisdiction.

In response to Bitsui's motion to dismiss, the State argued that the 1953 Patent was issued pursuant to the Stock-Raising Homestead Act rather than the Indian Homestead Act of 1884, and therefore the land underlying the acequia is not Indian country. The State also contended that the language of the Patent controlled rather than 18 U.S.C. §1151 or §1152, so that even if the Patent land was Indian country when granted in 1953, the express terms of the

---

[2] The patent language is taken from the state court's Order denying Bitsui's motion to dismiss for lack of subject matter jurisdiction. *State of New Mexico v. Curtis Bitsui,* Decision & Order, No: D1333-CV-2015-00228, filed March 4, 2016. *See* Doc. 1-4 (Ex. D to Initial Compl.) (document states that "[i]talics added by author").

Patent permit state jurisdiction. Assuming there was a trust held by the United States for twenty-five years—during which time there was an "allotment" that qualified as "Indian country,"—the trust ended in 1978 by operation of the deed itself, at which time Bitsui or his ancestors would be entitled to a patent without a trust, thereby subjecting the entire tract to state court jurisdiction.

Judge Rael agreed with the State, finding that the matter was subject to the state court's jurisdiction because the Patent created a trust for a U.S. citizen (under the Stock-Raising Homestead Act) rather than specifically for a tribal member (under the Indian Homestead Act of 1884) because when Mr. Pieseto applied for a patent for the land parcel, he did so as a U.S. citizen and not as a tribal member. Ex. D to Initial Compl. (Decision & Order). Judge Rael found that even if the Patent created an Indian allotment, the trust and allotment both expired after twenty-five years and that the Patent reserved rights to the acequia that are enforceable in state court. *Id.* The language of the Patent also specifically stated that even during the time the patent language intended to reserve ownership and certain uses of the land for Bitsui and his ancestors "in trust," it was still subject to other uses existing at the time the deed was issued. These other uses would arguably include any easements by the Cienega Community Association. Because these other uses are not within the "trust" –and as a result could not be considered to be part of any "allotment"—both state and federal courts would have joint authority to determine which rights are within the trust and which are outside the trust. Finally, in his Decision and Order, Judge Rael rejected the BIA Title status report because of its inconsistent language regarding the "trust" nature of the land as well as the document's unofficial nature.

## II. Filing of Federal Action

As trial approached in the state court case, Plaintiff Bitsui, joined by the Navajo Nation, filed this declaratory judgment action in federal court as well as a second motion to dismiss in

state court.[3] Bitsui argued that the State had failed to join the United States as an indispensable party and renewed his argument that the state court lacked jurisdiction. Bitsui argued that the state court's conclusion that the patent expired was incorrect and that although the allotment was subject to rights-of-way, this did not change its status as Indian country. The State reiterated its former arguments to Bitsui's first motion to dismiss. Judge Rael denied Bitsui's second motion to dismiss, relying mainly on the Patent's express language and noting that Bitsui did not refute the State's factual history of the property and the Patent. Ex. B (to this motion).[4] Under Judge Rael's Order, Bitsui was enjoined from preventing acequia officials from entering the property to maintain the acequia where access was reasonably necessary to exercise the water rights in the acequia.

Plaintiff Bitsui filed his Notice of Appeal in the New Mexico Court of Appeals on December 8, 2016.

## III. Legal Standard

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1160 (10th Cir.2000); *accord Corder v. Lewis Palmer Sch. Dist. No. 38,* 566 F.3d 1219, 1223–24 (10th Cir.2009). In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S.

---

[3] Plaintiffs initially sought injunctive as well as declaratory relief, but they have since amended the complaint to seek only a declaratory judgment. See Docs. 5 & 6. The amended complaint asserts federal jurisdiction under 28 U.S.C. §§1362 (action brought by Indian tribe) and 1331 federal question (based on 18 U.S.C. §§1151 and 1152).

[4] Exhibits referred to by the Court will be those attached to the pleadings underlying this motion, unless otherwise noted.

544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562.

## DISCUSSION

The Court will address both parties' motions in this Memorandum Opinion and Order because this matter involves solely legal issues based on facts which the parties concede are undisputed. This case centers on questions of law—specifically, whether the Court should hear this case and if so, whether the state court has jurisdiction.

**I.** *Younger* **Abstention Doctrine**

Defendants contend that this Court should abstain from deciding this case, including the question of whether Judge Rael had jurisdiction over the underlying state court matter, under the *Younger* doctrine. In *Younger v. Harris,* the Supreme Court held that federal courts, except in the most exceptional circumstances, must dismiss suits for declaratory or injunctive relief against pending state criminal proceedings. 401 U.S. 401 U.S. 37, 53–54 (1971). The Supreme Court based this restraint on notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems. *Id.* at 44–45. Under *Younger,* federal courts must abstain from exercising jurisdiction when three conditions are satisfied:

> (1) There is an ongoing state criminal, civil or administrative proceeding;
> (2) The state court provides an adequate forum for the claims raised in the federal complaint; and
> (3) The state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Columbian Financial Corp. v. Stork*, 811 F.3d 390, 394–95 (10th Cir. 2016); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 (1982); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). Yet, there is an exception to the *Younger* doctrine. *Younger* principles do not apply "in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith. . ." Huffman, 420 U.S. 592, 611 (1977).

Both parties concede that there is an ongoing proceeding in the pending appeal, but disagree on the other factors. Defendants contend that *Younger* applies because Plaintiffs are able to raise the same challenges to state court jurisdiction that are raised here and so the state court provides an adequate forum for Bitsui's claims. They contend that Bitsui should not be permitted to use this Court to act as an appellate court for the purpose of reviewing Judge Rael's determination. *See Sanchez v. Wells Fargo Bank, N.A.*, 307 Fed.Appx. 155, 158, 2009 WL 56894, at *3 (10th Cir. 2009) (rejecting plaintiff's federal causes of action as "nothing more than an attempt to immediately appeal a state court judgment with which he disagrees"). Defendants also argue that the last *Younger* factor is also satisfied because New Mexico's water rights, including the ancient acequias that date to Spanish colonial rule, are an important state interest, and that the underlying litigation in this case concerns the State's efforts to protect an ancient acequia that provides critical water in a desert landscape. *See, e.g., Harper v. Public Service Com'n of W.VA.*, 396 F.3d 348, 352 (4th Cir. 2005) (property law concerns, such as land use and zoning questions, are frequently "important" state interests justifying *Younger* abstention); *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 804 (U.S.Colo.,1976) ("It is probable that no problem of the Southwest section of the Nation is more critical than that of scarcity of water."); *see also Sierra Club v. California American Water Co.*, 2010 WL 135183, at

*7 (N.D.Cal.,2010) (state had "substantial state interest" in regulation of water resources within its borders).

Plaintiffs contend that *Younger* does not apply because the federal jurisdictional question is a threshold and significant issue that overrides any State's interest. Plaintiffs have presented cases which stand for the proposition that issues pertaining to federal jurisdiction override any State interests because it is a threshold issue.[5] The Court finds one of these cases, *Pueblo of Santa Ana v. Nash,* 854 F.Supp.2d 1128, 1132 (D.N.M. 2012) (*Santa Ana I*), instructive not only for the court's discussion on *Younger* but also for the court's treatment of other jurisdictional issues which will be referenced further in this opinion. The plaintiffs in that case, Pueblo of Santa Ana and Tamaya Enterprises ("pueblo plaintiffs') sought an order keeping a state court judge from exercising jurisdiction over a personal injury case arising from the allegedly negligent serving of alcohol on Indian land (Tamaya). They also sought a declaration that the Indian Gaming Regulatory Act, 25 U.S.C. §2701 et seq. ("IGRA") does not allow the shifting of jurisdiction from tribal courts to state courts over personal injury lawsuits brought against tribes or tribal gaming enterprises for alleged wrongs arising or occurring within Indian country.

    A.    <u>Pueblo of Santa Ana Case</u>

The *Santa Ana I* case traveled a long journey to federal court and is worth some discussion. It started out in state court as a personal injury case filed by the personal representatives for the decedents in the fatal car accident. The state court judge presiding over the case, the Honorable Nan G. Nash, dismissed the case for lack of jurisdiction, agreeing with the pueblo plaintiffs that the personal representatives could only bring their claim in tribal court.

---

[5] The Court omits cases cited by Plaintiffs which are plainly not analogous in any way. For example, *Joe v. Marcum*, 621 F.2d 358, 361 (10th Cir. 1980) did not address abstention at all and involved a final garnishment judgment against a tribal member. Another case mentioned by Plaintiffs is *Sprint Communications, Inc. v. Jacobs*, in which a national telecommunications provider sued members of a state utilities board, did address *Younger's* application to the case but did not involve either tribes or sovereign immunity. 134 S.Ct. 584, 586 (2013).

On appeal, the New Mexico Court of Appeals disagreed with Judge Nash, holding that the state court had jurisdiction over the action based on the plain terms of Section 8(A) of the Compact between the pueblo and state under the IGRA. *See Mendoza v. Tamaya Enters.*, 148 N.M. 534, 238 P.3d 903, 910–11; *Santa Ana I,* 854 F.Supp.2d at 1132 (describing procedural background of federal case). The New Mexico Supreme Court affirmed the Court of Appeals, and then proceeded to address the merits of the wrongful death claims. The Supreme Court ultimately concluded that the state court complaint stated sufficient facts to establish a third-party common law claim with respect to the passenger of the vehicle as well as a patron claim with respect to the driver, and remanded the case to the district court for further proceedings consistent with the opinion.

After the case was remanded back to state court from the New Mexico Supreme Court, the pueblo plaintiffs filed the federal complaint which asserted jurisdictional arguments challenging the state court's jurisdiction over the personal injury claims. The personal representatives moved to dismiss for want of subject-matter jurisdiction under the *Rooker-Feldman* doctrine, and Judge Nash moved to dismiss the federal case raising several jurisdictional arguments, one of them being that the *Younger* doctrine barred the federal court from enjoining the performance of her judicial duties. The federal district judge assigned to the *Santa Ana I* case, the Honorable Bruce D. Black, rejected the *Rooker-Feldman* argument and also concluded that application of the *Younger* abstention "would not be appropriate." 854 F.Supp.2d at 1142.[6] In making the latter determination, Judge Black acknowledged that there

---

[6] The *Rooker-Feldman* doctrine bars lower federal courts from hearing claims that were either actually decided by a state court, or "inextricably intertwined" with a prior state court judgment, in order to avoid appellate reviews of state court judgments by lower federal courts. *Johnson v. De Grandy*, 512 U.S. 997 (1994); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Judge Black declined to conclude that the *Rooker-Feldman* doctrine barred the jurisdiction of this court because the relief sought by the pueblo plaintiffs "would not reverse or otherwise undo the relief granted by the New Mexico Supreme Court" in the underlying personal injury case. *See Santa Ana I,* 854 F.Supp.2d at 1138.

was "clearly an ongoing state court judicial proceeding" and acknowledged that state courts are "better qualified to interpret issues regarding the state's own common law." *Id.* at 1141. However, the court found that the state's argument "overlooks the threshold question" of "whether the state court has jurisdiction in the first place to hear the [personal representatives'] tort claims" and that resolving this jurisdictional question implicates tribal sovereign immunity which was "an issue that is paramount and federal." *Santa Ana I,* 854 F.Supp.2d at 1141.

Five months after Judge Black wrote the opinion in *Santa Ana I* addressing the jurisdictional challenges brought under the *Younger* and *Rooker-Feldman* doctrines, the case was reassigned to the Honorable C. LeRoy Hansen. *See Pueblo of Santa Ana et al. v. Nash et al.,* Civil No. 11-0957 LH/LFG (Doc. 81). With the jurisdictional challenges finally resolved, Judge Hansen tackled the issue which prompted the federal lawsuit in the first place: whether the IGRA permitted a shifting of jurisdiction from tribal court to state court over the personal injury claims.[7] Judge Hansen noted that absent clear federal authorization, state courts lack jurisdiction to hear actions against Indian defendants arising within Indian country." *Pueblo of Santa Ana v. Nash*, 972 F.Supp.2d 1254, 1262 (D.N.M.2013) (*Santa Ana II*). Judge Hansen found in favor of the pueblo plaintiffs, holding that the IGRA was confined to issues of licensing and regulation and thus did not encompass wrongful death suit against tribal gaming enterprise. The case was eventually dismissed on appeal by stipulation of the parties. (Civil No. 11-0957, Doc. 97).

B.  Cases Rejecting Application of *Younger* and Distinction from This Case

Plaintiffs also cite to other cases where federal courts have refused to apply *Younger* where state proceedings were ongoing, usually on appeal to the state supreme court. In *Seneca-*

---

[7] In the interim between *Santa Ana I and II* and before it was reassigned, Judge Black issued another Memorandum Opinion and Order rejecting other attempts by the personal representatives to dismiss the case on jurisdictional grounds. *See* Civil No. 11-00957 BB/LFG. The Court will discuss these jurisdictional challenges in more detail below.

*Cayuga Tribe of Oklahoma v. State of Okla. ex rel. Thompson,* 874 F.2d 709 (10th Cir. 1989), the State of Oklahoma sought to enjoin the operation of bingo games on Indian trust land. The Tenth Circuit Court of Appeals found that the state had no significant interest in enjoining operation of the games in light of the "paramount federal policy that Indians develop independent sources of income and strong self-government." *Id.* at 716. The Ninth Circuit declined to apply *Younger* in *Fort Belknap Indian Community of Fort Belknap Indian Reservation v. Mazurek,* 43 F.3d 428 (9th Cir. 1994). The Ninth Circuit recognized that the state "undoubtedly has an interest in enforcing its liquor laws, but only if federal law gives it jurisdiction to do so for violations that occur on an Indian reservation." *Id.* at 432. The Ninth Circuit concluded that the state could not prosecute Indians for liquor law violations on reservations, and entered summary judgment in favor of the Indian community. *Id.* at 432; *see also Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535 (9th Cir.1994) (affirming district court's decision not to abstain under *Younger* where threshold issue was whether state had jurisdiction to prosecute Indians employed in tribe's gaming centers).

These cases consistently hold that where the issue before a federal court is "paramount" and "federal"—particularly where the question is whether state court has jurisdiction over a particular category of cases—*Younger* is not appropriate because that question must be resolved in federal court based on federal law. However, the Court finds that the cases cited by Plaintiffs are not analogous to the case before the Court because neither this case, nor the state court proceeding, sought resolution of a federal legal issue or a threshold jurisdictional question. In the state court case, Judge Rael did not embark on an analysis to determine whether state courts have jurisdiction over "offenses" committed on "Indian country" and he made no decision concerning federal jurisdictional law. That question had been settled under a federal statute

which mandates that the United States has "sole and exclusive jurisdiction" over offenses that take place in "Indian country." *See* 18 U.S.C. §1152. Judge Rael did not revisit that legal issue but based his analysis on that established federal legal standard. At its core, this entire matter is a trespass case over which a state court has jurisdiction *unless* the allotment was located in Indian country. Judge Rael answered that question in a measured and detailed opinion and, based on the evidence and testimony presented in the state court litigation, concluded that the allotment on which Bitsui resides is not Indian country,

Plaintiffs are correct that "federal law, federal policy, and federal authority are paramount in the conduct of Indian affairs in Indian country." *Seneca-Cayuga Tribe of Okla.,* 874 F.2d at 713; *Williams v. Lee*, 358 U.S. at 221 ("Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction . . . ."). However, the question of whether an "offense" was committed on "Indian country" is not reserved for federal courts. State courts have adequately handled the task and there is no bar to state courts continuing to do so. *See, e.g., State v. Frank*, 132 N.M. 544 (N.M.,2002) (finding that court had jurisdiction because area where accident occurred was not dependent Indian community); *State v. Quintana*, 143 N.M. 535 (2008) (land where crimes occurred was not Indian country and thus state had jurisdiction over prosecution). In *Tempest Recovery Services, Inc. v. Belone*, 134 N.M. 133 (N.M.,2003), the issue before the New Mexico Supreme Court was whether tribal court civil jurisdiction extended to allotted land within "Indian country" but beyond reservation boundaries. The court recognized that federal precedent applies the definition of "Indian country" in 18 U.S.C. §1151 to civil matters as well as criminal matters, and overruled previous state law precedent to the contrary. It then remanded the case to state district court to determine whether Navajo law applied to the wrongful repossession counterclaim at issue in the case.

Thus, the cases relied on by Plaintiffs in this case fall into a different category where state courts were deciding threshold jurisdictional issues, rather than where a state court applies settled federal jurisdictional law to the issue at hand. In *Santa Ana I,* for example, the federal court declined to apply *Younger* because the "*threshold question* was whether the state court has jurisdiction in the *first place*" over the state law tort claims. 854 F.Supp.2d 1128 (emphasis added). In *Santa Ana II,* the federal court answered the question, holding that the IGRA did not grant jurisdiction to state courts over personal injury lawsuits brought against tribes or tribal gaming enterprises. 972 F.Supp.2d at 1266-67. This jurisdictional resolution would apply to *all* similar personal injury lawsuits, not only the parties involved in the *Santa Ana* case. In the other cases cited by Plaintiffs, the state courts also took stabs at deciding matters that were eventually held to be federal jurisdictional matters. *See, e.g., Seneca-Cayuga Tribe of Oklahoma,* 874 F.2d at 714 ("the *threshold* question whether the State has authority to regulate Indian bingo is a matter of federal law") (emphasis added); *Fort Belknap Indian Community*, 43 F.3d at 432 ("the question of a state's jurisdiction to prosecute is one of *first impression*. It is an *issue of federal law*") (emphasis added); *Sycuan Band of Mission Indians,* 54 F.3d at 431-32 (9th Cir.1994) (finding that "the *threshold issue* of the State's jurisdiction to prosecute is a matter of *federal, not state, law*" where case involved "a *conflict* over the power of state authorities to prohibit certain forms of Indian gaming") (emphasis added). The state court litigation in this case did not face the same threshold questions because the federal jurisdictional issues are settled, pursuant to 18 U.S.C. §1151 and 1152.

      C.     *Younger* Doctrine Not Relevant to this Case

In light of the foregoing discussion, the Court finds that it need not decide whether *Younger* applies because the doctrine is not relevant to this case. Two of the *Younger* factors

appear to be satisfied: there is an ongoing state proceeding, and there is an important state interest in the enforcement of water and property rights. Based on the Court's discussion above, there is no federal jurisdictional "threshold" question to resolve. Moreover, the balancing of state versus federal interests is not critical because the question here is not whether this Court should "abstain" from hearing this case while there is an ongoing state court proceeding, but rather whether the Court has jurisdiction to hear it at all.

As mentioned earlier, Plaintiffs' specific objection is *not* that Judge Rael has no jurisdiction over the case because state courts have no jurisdiction over "offenses" that take place in Indian country. That legal premise was never questioned either by the parties or Judge Rael in the state court case. Plaintiffs simply protest Judge Rael's conclusion that the allotment is not Indian country. In other words, they contend that Judge Rael got it wrong, and they seek to have this Court revisit the issue. The legal doctrines that appear to be more applicable to this case—and dispositive to the issues before the Court—are those of claim and issue preclusion.

## II.   Claim and Issue Preclusion

Defendants have not raised either of the preclusion doctrines (res judicata or collateral estoppel), although the Court may raise them *sua sponte* in the interests of avoiding "unnecessary judicial waste." *U.S. v. Sioux Nation,* 448 U.S. 371, 432 (1980) (Rehnquist, J. dissenting on other grds.); *see Arizona v. Calif.,* 530 U.S. 392, 412-13 (2000) (court must be "cautious about raising a preclusion bar *sua sponte* where "no judicial resources have been spent on the resolution of a question"); *Gurule v. Utah,* 2008 WL 5210375, at *2 (D.Utah 2008) (revisiting the claim preclusion issue *sua sponte*).

Where res judicata prevents a party or its privies from repeatedly suing another for the same cause of action, collateral estoppel prevents a party or its privies from re-litigating

14

"ultimate facts or issues actually and necessarily decided in a prior suit." *Deflon v. Sawyers*, 137 P.3d 577, 582 (N.M. 2006); *see Sil-Flo, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1520, n.3 (10th Cir. 1990) (the terms "collateral estoppel" and "issue preclusion" are used interchangeably). There are two prerequisites to the application of collateral estoppel: (1) the issue to be precluded must have been actually and necessarily decided in the prior case, and (2) the party against whom collateral estoppel is invoked must have had a full and fair opportunity in the earlier case to litigate the issue to be precluded. *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1523 (10th Cir.1987).[8]

### A. Finality of Judgment or Decision

Judgment may be final for res judicata purposes even if appeal has been taken and not yet resolved. *See e.g., Brunacini v. Kavanagh*, 869 P.2d 821, 827-28 (N.M. App. 1993) (relying on Restatement (Second) Judgments (1982), § 13 and comments thereto). However, for collateral-estoppel purposes at least, "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. Restatement (Second) Judgments, § 13). Because parties have not raised either preclusion bar in their briefs, and because the Court finds that an analysis under the doctrine of collateral estoppel sufficiently disposes of the issue, there is no need to further consider whether res judicata applies.

### B. Collateral Estoppel—Actually Litigated and Necessarily Decided

---

[8] New Mexico law includes two other elements that are not present in Tenth Circuit precedent: that the parties are the same or in privity with the parties in the original action, and that the subject matter or cause of action in the two suits are different. *Compare Shovelin v. Central New Mexico Elec. Co-op., Inc.,* 115 N.M. 293 (N.M.,1993) with *Lombard v. Axtens,* 739 F.2d 499, 502 (10th Cir. 1984). However, both elements would be satisfied here. First, the state court case is a trespass case while the instant federal action challenges a sole jurisdictional issue, and thus the causes of action are different. Second, although the Navajo Nation was not a party in the state court litigation, the interests of both Bitsui and the Navajo Nation are served in this case, since there is a "substantial identity" between the issues in controversy and the interests of both parties are substantially the same. The federal complaint is premised on the §§1151 and 1152 as a jurisdictional basis to resolve both the question of Bitsui's alleged Fourteenth Amendment rights, as well as the Navajo Nation's interest in sovereign immunity. *See Deflon v. Sawyers,* 137 P.3d at 580 (quoting *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1174 (10th Cir. 1979) (describing "privity").

Plaintiffs filed this federal case on the jurisdictional issue that was heard and decided by Judge Rael in the state court case. For collateral estoppel purposes, finality does not rest on whether the matters decided were purely jurisdictional or on the merits. A dismissal for lack of jurisdiction precludes relitigation of jurisdictional issues necessarily decided on the jurisdictional question. *See Park Lake Resources Ltd Liability Co. v. U.S. Dep't of Agriculture,* 378 F.3d 1132, 1136 (10th Cir. 2004) (although a dismissal on jurisdictional grounds is not a final adjudication on the merits, "dismissals for lack of jurisdiction preclude relitigation of the issues determined in ruling on the jurisdiction question"), cited in *Burrell v. Armijo*, 456 F.3d 1159, 1172, n.10 (10th Cir. 2006) (a dismissal for lack of jurisdiction, such as sovereign immunity, is an exception to the final adjudication on the merits requirement).

Bitsui filed two motions to dismiss in the state court case making the same jurisdictional claim: that the allotment was located in Indian country and that the court's conclusion that the patent expired did not change its status as Indian country, regardless of whether the land was subject to rights-of-way. Judge Rael rejected these arguments and denied both of Bitsui's motions. These same questions are now before this Court, and Plaintiffs present the same arguments and evidence (e.g., the Patent language and the status of Mr. Piesoto when he initially applied for the Patent), hoping to resolve those questions in their favor this time. The Court finds that the jurisdictional issue presented and addressed by Judge Rael in the state court case is identical to the issue presented by Plaintiffs in this federal case, and that collateral estoppel bars this Court from addressing it again.

The Court has spent a considerable amount of time discussing the *Pueblo of Santa Ana* case in the previous discussion related to the *Younger* doctrine. Two of the decisions in that case were published, and have been referenced here. *See Santa Ana I,* 854 F.Supp.2d 1128 and *Santa*

*Ana II,* 972 F.Supp.2d 1254. Between those two published opinions, Judge Black issued another opinion addressing a motion filed by the personal representatives in which they argued that the doctrine of collateral estoppel barred the court's consideration of the case.[9] *See* Civil No. 11-957 LH/LFG, Doc. 82. However, the court found that the jurisdictional question in the state court case was "very different" from the one that was presented to federal court in *Pueblo of Santa Ana.* In the state court case, the pueblo plaintiffs argued that the state dramshop act did not apply to the tribe and that the only possible liability it might have was under the pueblo's liquor ordinance. However, in the federal case, the pueblo plaintiffs argued that section 8 of the Compact between the pueblo and state under the IGRA does not permit state courts to exercise jurisdiction over personal injury lawsuits. Thus, because the jurisdiction-shifting provision in Section 8 was not argued in the state court proceedings, Judge Black concluded that the issue raised in the *Pueblo of Santa Ana* case was not "actually litigated" in state court and that it would "not be fair" to apply collateral estoppel to prevent the pueblo plaintiffs from litigating that question in federal court. Civil No. 11-957 LH/LFG, Doc. 82 at 19.

The instant case poses a jurisdictional issue which is identical to the one that was raised, argued and fully and actually litigated in state court before Judge Rael. In rejecting Plaintiff Bitsui's arguments and denying those motions, Judge Rael "necessarily decided" the issue. The Court finds that the elements of collateral estoppel are satisfied, and for this reason concludes that this Court is barred from considering the issue again.

## CONCLUSION

---

[9] The personal representatives also argued that res judicata applied, but Judge Black found that it "need not decide whether the [state court decision] is sufficiently final to support application of the bar of res judicata" because it was " unquestionably final enough to be given collateral estoppel effect." Civil No. 11-00957 LH-LFG, Doc. 82 at 8.

In sum, the Court finds and concludes that the *Younger* doctrine is not relevant to this case and so the Court need not decide if it applies. Even if the state court proceeding was concluded, the Court finds that it is barred from hearing this case because the identical jurisdictional issue presented by Plaintiffs in this lawsuit has been necessarily litigated by the parties and actually decided by Judge Rael in the state court proceeding, *State v. Bitsui*. This case does not concern threshold questions of federal jurisdiction, and hearing this case would in effect give Plaintiffs a second chance to relitigate the question of whether the allotment in question is located on Indian country under 18 U.S.C. §§1151 and 1152. This question has already been answered, and collateral estoppel bars this Court from answering it again.[10]

In light of the Court's findings herein, Defendants are entitled to judgment on the pleadings on Plaintiff's entire complaint. Count I of the Amended Complaint (Doc. 5) asserts a violation of Bitsui's civil rights, namely a liberty interest secured by the due process clause of the Fourteenth Amendment to have matters tried in a court that has jurisdiction over the subject matter. Count II is asserted by both Plaintiffs against both Defendants, and alleges that Judge Rael (in presiding over the state court case) and District Attorney Martinez (in prosecuting the case) infringed on the territorial jurisdiction of the Navajo Nation and its right to exercise jurisdiction over Navajo Indian country. The Court's findings dispose of both claims because they are premised on the same federal statutes, 18 U.S.C. §§1151 and 1152 and the state court decision related to those statutes.

**THEREFORE,**

---

[10] It is worth noting that this Court would have been precluded from hearing this case even if the state court appeal was decided and the matter was reduced to a final judgment. In such a case, the *Rooker-Feldman* doctrine would most likely bar a federal court's jurisdiction. *See Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284 (2005) (describing doctrine as applying in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

**IT IS ORDERED** that Judge Rael's Amended Motion for Judgment on the Pleadings **(Doc. 21)** is GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion for Judgment on the Pleadings **(Doc. 25)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall issue separately.

_____
UNITED STATES DISTRICT JUDGE